21-4100, U.S. v. Mack Ms. Scalfi, when you're ready, we'll proceed. Good afternoon, and may it please the court. My name is Leah Yaffe, and I represent Mr. Shane Mack. For two independent reasons, Mr. Mack's adjusted offense level was set one high guidelines range. Specifically, the district court first plainly erred by failing to group the fraud counts with the felon in possession count, and second, erred by applying a two-level vulnerable victims adjustment to the fraud counts. And this court only needs to find that one of those two errors occurred to grant Mr. Mack the relief sought, but I would like to address both today in person. And I'd like to start with a quick three-point overview of the grouping issue. So first, we have an unchallenged explicit finding by the district court that the firearms were possessed in connection with the fraud offenses. That finding is not disputed on appeal by either party, and it's where we start. Second, the enhancement in the fraud chapter with virtually identical language should have been applied once the district court made that finding, that the guns were possessed in connection with the fraud offenses. Third, the grouping guideline, 3D1.2, which is titled groups of closely related counts, tells us the four ways the commission has determined that offenses can be closely related for grouping. Option C plainly applies here. The possession of the firearm, which was the conduct underlying the 922G1 count, is embodied in the fraud chapter enhancement for possession of a firearm. And I said three, but I guess I meant four points, which is just to reiterate that I think we easily meet prong three and prong four of the plain error standard here, and the government hasn't suggested otherwise in its briefing. So to look at the two sub-errors of this issue in more detail, the first is that the district court did not apply the enhancement in the fraud chapter for possessing the firearm in And the government's only argument against application of this enhancement is really that hypothetically the same language in the fraud chapter could mean something different than the same language in the firearm chapter. Do you know if there's been any occasion in which that enhancement has been applied to a offense level calculated under the fraud section? I believe there have been cases of it being applied and I'm having trouble recalling a case name right now. Do you mean just the enhancement being applied separately from the firearm conduct? I continue to get confused about which section we're talking about, but what I'm saying is under the fraud guideline, there's an enhancement for doing it in connection with another felony. In this case, that's the possession of the firearm. Are you aware, do I have it right? This is what was not, this is the enhancement the judge did not adopt, is that right? Yes, and the language is that possession of a firearm in connection with the offense, and there they're talking about the fraud offense. Well, the one he didn't. Yes, that's the fraud chapter offense. Do you have any occasion where any court has applied that enhancement in that circumstance? Because we didn't find any in my job. Let me make sure I'm understanding the question. I'm not aware of a case where this specific issue has come up where there was a 922g1 count. I think there are cases, and I believe there's some in the answer brief that just apply the enhancement in the fraud chapter. There's, I may be good, but here what we're saying is not asking this court to find what in connection with in this fraud enhancement means. Any application, any time, all we're saying is it means the same thing as the exact same language in the firearm chapter. So once you have a finding that the firearms are possessed in connection with the fraud offenses, that finding is true for the 922g2.1 chapter. It's true for the firearm enhancement in the fraud 2b1.1 chapter. It's the same language. So that's really, we don't need to go into the ins and outs here. When would you ever apply this enhancement? It's just, if you apply it here, you apply it there. You can do no applications of it, or you can do both, but you can't do one without the other. Okay, well, under the four-level enhancement, which was applied, right, there is a definition of the term which you're saying is the same, that in connection with, correct? Yes. There's an application note 14 defined the term. Yes. But we also know that we don't take a definition and apply it to a different guideline or a different section, and that we only decide to do so on a case-by-case basis. And you're under a plain error standard here, so how could it, if there is no case where we've said so, but this definition applies equally, how do you get there under plain error? So in addition to the plain text, in this case we have two Tenth Circuit cases at least where that language in the firearm chapter, the plus four enhancement, that definition was used to, or the way in which we interpret that enhancement was used to interpret in connection with language and two other guideline sections, even though, you know, the definition is only in the firearm chapter, and that's in U.S. v. Taylor and U.S. v. Fargrove. So I think, you know, in this case we have the plain text is identical. Those weren't plain error cases either, were they? I think that Taylor's a little confusing because it's a plain error case, but it's talking about a booker issue, so this analysis comes up in prong three. But both of those cases are just this court saying, look, this is how we interpret in connection with language, and then going into the analysis of that context. That's correct. I just do want to reiterate that most cases you don't have a district court specific finding on the exact same language that a gun is possessed in connection with the fraud. It's sort of a rare case here where we have almost a pretty much identical enhancements and a specific district court finding that neither party is challenging. I would like to turn to the grouping piece of issue one. So the text in 3D1.2c is also clear. I think the application is also clear here. The fraud enhancement, the plus two in the fraud chapter that wasn't applied, embodies possession of a firearm, and that's what's being punished in the 922g1 count. The government tries to muddy the waters here in two ways, but I don't think they can in two ways. The first is they say there's a prerequisite that these counts need to be closely related under subsection C. And they define closely related to say you have to have the same victims, and the same societal interest, and the same conduct, and the same harm. I think that's plainly the wrong way to read the commentary note. We should read it as clarifying the text, not adding a new requirement to it. But even if it is a prerequisite, it can't mean what the government says it means, because that would swallow the entirety of 3D1.2 into subsection C. It's subsection A that requires the same victims. That's true of subsection B. It's subsection D that requires an identical type of harm. The guidelines themselves, including the commentary note that the government's relying on, say you don't have to have the same victims for subsection C. This is clearly one of four options to be closely related. The problem is the language in note 5 is pretty clear. And it's not a note to the full section. It's a note to subsection C. And it says, of course, and I think reading the only if the offenses are closely related. And in the last sentence, it talks about there needing to be a different harm or societal interest. And I think you'd have to agree there's different societal interests. One is protection from violence, that's the violent charge, and the other is protection of financial security, which is what's involved in the fraud charge. So let me, I think it addresses your question, but told me it's a present. I think the issue of whether closely related is a prerequisite, I think that's the wrong reading, but it's sort of a red herring. The real issue is do you define whatever closely related is to mean what the government says you define it as, which is swallowing the entirety of the rule. So even if we say closely related based on comment 5 is a separate prerequisite, what comment 5 tells us is if you have an assault that happened at a different time than a bank robbery, you're not applying the bodily injury enhancement to the bank robbery chapter, you're not grouping those counts, that's what closely related means. The end of that comment where it talks about different harms or societal interests, it's saying you can have that under subsection C, whereas you couldn't have that under subsection A. So I think that actually helps my point. This is a different argument than you made before the district court, isn't it? It's a different version of the argument, yes. The trial attorney did. Completely different. Yeah, and we're on plain error. I think we concede that. And we are on plain error review. Correct. Okay. Yeah. I just don't, I mean, I think it's plain that you can't read it the way the government's reading it because that is the entirety of this grouping rule into one comment supposed prerequisite. I think that's inconsistent, plainly, with the text of the guidelines. I want to... What's the bottom line? It's one level, isn't it? Yes. So we would change this from 27 with the offense level to 26, and it does change the guidelines range, which the Supreme Court has made clear is generally a prong three problem, or it works in our favor on prong three. I would like to turn to the second issue with remaining time if the court has no further questions on the first one. It's so plain we don't have any more questions. Well, maybe it's helpful. So this one's not on plain error. The vulnerable victim? Yes. Thank you. So this court has been very clear in multiple cases that the vulnerable victims was a particular act of depravity beyond what's typical for the criminal conduct that we're talking about. And this is not the exceptional case. This is the district court saying the vulnerable victims adjustment should essentially apply whenever there's a low-income young adult who fell for a get-rich-quick scheme. And I think a lot of the district court's reasoning is that they think Ms. Hunt must have been extra naive, extra stupid, extra inexperienced, all because she fell for the scam. That's the basis of the district court's findings there, and it's something that this court has said is impermissible logic. Just because someone falls victim to a fraud, they're a victim. They're not an unusually vulnerable victim. That sort of circular reasoning is impermissible according to this court. Doesn't the fact that the person did fall victim, isn't that a relevant consideration? Didn't the judge note that point but then pointed out other things involving this victim that indicated she was particularly weak? A few points there. I don't think that just the fact of being a victim is something that the court can consider when you're talking about a fraud that's in Brentson and Profit. And you know, Profit makes the point that generally the reason you fall for a scam like this, there was an investment scam, is because the lure of getting money faster than you normally would makes you a basis for unusual vulnerability. And in this case, you're right, the court did look at a few other things. One of them was her age, which is 18. This court has said repeatedly that age does not mean anything on its own, and that's true even when the victim was an elderly victim of a violent assault. That's Tisnell. I think the finding that she's stupid is entirely based on the district court's confusion that she fell for the scam. Yeah, but the basis for that, what the district court's saying when they're saying she's naive and stupid is saying she fell for their scam. There's nothing more in their record that talks about her intelligence level, about her gullibility. The only thing we know is she fell for the scam, and that's just legally impermissible in this court. I think it's also factually incorrect on this record, which we talked about in the matter of law. Could the term stupid have equated with naive, or particularly naive? Yeah, in addition to just being young. I think he's saying that, but again, the reasoning, if you read the sentencing transcript, is again tied to the fact that she fell for this fraud. And we do have, you know, the district court saying it would take a particularly stupid person to think this was legal, but she's told by Bank of America that it's illegal, and she testifies herself that she agreed to lie to her credit union. So I think, you know, there's only so far you can stretch that finding to say she's particularly stupid. She didn't think she was going to be defrauded by the defendant here, but that doesn't mean she didn't understand a little bit about what was going on. I would like to save their remaining time for rebuttal, if that's all right with the court. Thank you. May it please the court, Nathan Jack for the United States. Mr. Mack paints the sentencing guidelines in black and white. At every turn of his sentence, Mr. Mack does actually instruct in his authoritative commentary and injects instead his own oversimplified interpretation. The guidelines themselves recognize that this part has ambiguities, and ambiguities cannot be the basis for plain error. With blinders to this nuance, Mr. Mack zeroes in on a snippet of text, casting aside this court's case law and the principles and factors that it instructs us to consider. His overcharacterization and repeated mischaracterizations of this court's precedent as simply the United States interpretation is really an attempt to mask the deficiency of his case. As a quick glance at the guidelines, eliminate every argument that he makes. Three in particular principles show that the court did not claim the error in filling to group his fraud counts with his firearm count. First, the offenses were not closely related. It's not clear and obvious that they were closely related. Second, it isn't settled law that the enhancement of the fraud guidelines he now seeks would apply. And third, it isn't clear or obvious that grouping was needed to prevent double counting. First, the closely related accounts. As a procedural note, Mr. Mack failed to raise this argument in his opening brief, and therefore forfeited this. It is a requirement for grouping as application note fives. Again, this is not the United States interpretation. This is the guidelines authoritative commentary instructing. Of course, this applies only if the offenses are closely related. And so we can look to what this court has said in Peterson and in Malone of what that means for the offenses to be closely related. And there this court looks to factors such as the conduct, the victims, the harm, the purposes. Mr. Mack never engages with this analysis. He cannot satisfy his burden of plain error without showing that the offenses are closely related, and he fails to take this court's word on its face because it has not satisfied that burden. This court can affirm on that basis alone. Turning to the merits, because Mr. Mack hangs essentially his entire reply brief on the bank robbery hypothetical, we can assess whether the offenses here are closely related by contrasting the facts here with the facts of the bank robbery example listed in the guidelines. There, the sole possession of the gun that we have was to commit the bank robbery. It was the exact same conduct that was at issue between there. Here, on the other hand, Mr. Mack's firearm count was based on finding two loaded firearms during the routine traffic stop. This isn't inextricably intertwined like the court in Malone examined. This is very distinct conduct. If we look at the fraud conduct that he engaged in, the tens of thousands of Facebook posts, the pages of interactions he had with his victims, yes, there are references to firearms there and photos of firearms there, but the vast majority of his fraud conduct did not involve a firearm. Again, we have distinct conduct here. We also have distinct harms. The harm that Mr. Mack imposed through his fraud was financial hardship on individuals like those victimized here, whereas the harm that we have and the victims that we have through his possession of a firearm was the societal interest against having someone like Mr. Mack, who has prior felony convictions, to possess firearms, especially loaded firearms. So again, different harms, different victims. Isn't the argument you're making now about this being entirely distinct conduct, isn't it entirely inconsistent with the argument that you made below about the application of the enhancement, four-level enhancement in the first place? It's not inconsistent. The question of whether firearms were possessed in connection with another felony is a very different question, and that's where Mr. Mack conflates. What was the argument in support of that? Of the four-level enhancement below? What was the argument, and how is it different and distinct from what you're just now saying? Again, we pointed to Facebook posts, and we pointed to Mr. Mack's references of being strapped, of creating this persona, and that's what the district court found is that the possession of the firearms emboldened him, that he had it for protection, that he had it to create a persona. So that is sufficient for the connection. Isn't that different than saying what you're saying now, which is that they're just entirely distinct? There's no connection. I'm not saying they're entirely distinct. I'm saying they are not. No, you didn't. You said they were entirely distinct, essentially. I'm saying it involves... Misunderstanding your argument, I guess. I'm saying they involve a distinct conduct here. So again, the 2K2 firearm enhancement applies so long as there is the potential for facilitating the other felony offense. So for example, in Sanchez decided this year the defendant simply possessed a firearm and stole a car, even though he did not use that firearm at all to steal the car. And this court found that was sufficient to trigger the in connection with enhancement for the firearm guidelines. If we look at this court's analysis of the closely related offenses in Peterson, in Malone, and if we look at other circuits who have similarly said it, the First Circuit in Martin, the 11th Circuit in Doxey, that's a different inquiry than what we have of whether the firearm enhancement applies. Those are two separate questions. And so, yes, there is distinct conduct here. But we still have that finding below. And again, Mr. Mack doesn't challenge applying the 4-level enhancement. Mr. Mack says that, well, if we apply the closely related offenses analysis in the way that this court has instructed, again, not the government's interpretation, but how this court has instructed, then it subsumes subsection C into subsection A. Again, the guidelines recognize this. Note 5 says, frequently, this provision, meaning subsection C, will overlap with subsection A, at least with respect to specific offense characteristics. So again, the guidelines recognize that the analysis for subsection C will look similar to the analysis of subsection A. This isn't the government's reading. This is the guidelines authoritative commentary showing that similar analysis. And we don't need to decide whether the offenses are closely related or not. We are on plain narrative review here. And so cases, even out-of-circuit cases like Martin, where the First Circuit specifically said, if you look just at the text, sure, they have a case. But we can't just look to the text. We have to look at Note 5. We have to engage in a separate analysis of whether the conduct is distinct, of whether the harms are distinct, of whether the victims are distinct. That shows there is another plausible interpretation to the guidelines than the black and white interpretation that Mr. Mack offers. Turning to the second point about in connection with, Mr. Mack's only point on this is, again, pointing to the firearm guideline, which has its own specific definition in Note 4, the potential for facilitating. And he points to two other Tenth Circuit cases that have applied that definition to other guidelines as well. But again, we do this on a case-by-case basis, and there is no authority, there is no case law, in bringing that interpretation to the fraud guideline. Without that, we can't show plain error. But even if we look at those two cases, if we look at Taylor and we look at Hargrove, that was not a rote adaptation of the definition from the firearm guideline. This court engaged in extensive analysis, looking to other principles as well, on how we interpret the phrase in connection with Hargrove, I believe. The analysis on that interpretation span four pages. That type of analysis does not give rise to plain error. We don't have binding authority here, and there are multiple plausible interpretations to the phrase in connection with. We can see that ultimately, Mr. Mack may be correct, but that is not enough to show plain error. On the third point, it is not clear or obvious that grouping was needed for double counting. And we can think about it this way. If we flip the offense levels of the fraud and the firearm account, we can see why we have the grouping rules. Fraud was 26, and firearm was 25. Then whether we apply that two-level enhancement matters. It could change the offense level for the fraud guideline to 28. And then with the unit analysis, it would bring the combined offense level to 29. So they're assuming that the enhancement would apply, and assuming they're closely related, Mr. Mack would be hit twice, both in the enhancement and then again in the unit analysis. That is wholly lacking here. The offense level is the same, because not only is fraud the less serious offense, so whatever specific offense characteristics we add to it, whatever enhancements we add to it, it doesn't show in the offense level of the most serious offense that is based for the offense level. But it doesn't affect the unit analysis at all. And I would point this court to the decision in Doxy, where the 11th Circuit addressed this very question of what do we do with an enhancement to a less serious offense that doesn't affect the unit analysis? And the answer is, because it doesn't affect the outcome, it doesn't contribute to double counting. Because Mr. Mack is not satisfied, he's burdened with plain error on that. This court should affirm on that. Turning to the vulnerable victim enhancement, the district court made specific individualized findings about the victim here. And it was not just simply that the victim was victimized by this court. The district court found that she was young, that she was inexperienced, that she was unsophisticated, that she was naive. We are talking about an 18-year-old woman, fresh out of high school, working at a minimum wage job, struggling to keep a roof over her head to provide for her family, all of a sudden gets this opportunity of, you can make $9,000. Does her obvious complicity enter at all into this calculus? I don't think it's obvious complicity. Again, the victim testified that she knew nothing what a scam was. No, but she knew what she was doing. And she was going to get money for nothing. The district court interpreted that to be as, again, she's an 18-year-old probably working fresh out of high school, probably working her first job. She may not understand how payroll works. She may not understand what's actually going on with the underpinnings here. Just like elderly people who are financially unsophisticated, and may not understand when they're told these guaranteed rates of return. For most of us, that would raise a red flag. But the district court found that the victim here was naive. And we can see that. She testified she didn't know what a scam was. She was in too deep to really recognize what was going on. And it's not that Mr. Mack just preyed on her once. He preyed on her twice, after she had already given over her bank account information. Mr. Mack asked again, hey, why don't you go open a new bank account at a credit union in Washington? And she complied. That repeated preying on victims like that is the brave conduct that this enhancement was designed to punish. Well, she knew something was wrong because they shut down her account. I mean, she could be dumb. A high school graduate, what can you expect? But it seems to me that she knew a whole lot more than you're suggesting. That's not the district court's findings. I know. The district court. Pretty obvious, though. Again, the district court was the one who saw this victim testify. Who saw her mannerisms. Who saw her behavior. Who was able to get a better sense than we can looking at a cold record. And far removed from... The district court was there and made the factual finding that she was naive. That she was inexperienced. That she was stupid. And again, those are the victims that we have this to protect. It's because they can't... Unable to protect themselves from schemes like this. If there are no other questions, I ask this court to adjourn. Thank you, counsel. You just have a few... Go ahead. You just have a few seconds, but I think you probably would be well advised to respond to the waiver argument. That you did not address closely relatedness. Thank you. In your opening brief. And that's an essential element. So to address it in your reply brief is too late. Sure. I'll start there. We did address it. It's opening brief at 17. We talk about the comment, I use the phrase sufficiently related, which is in the same commentary example as closely related. I also responded to this in the reply brief at page 3 and 4. I don't think this is a forfeited argument to the extent it's a prerequisite. I think the government gets wrong what the commentary 5 says about subsection A. It's clearly drawing a distinction and recognizing there's a distinction between section C and A. And they've ultimately presented no tenth circuit case where the text was met for 3D1.2C. But somehow the commentary said that they couldn't grip on those grounds. So for those reasons, we'd ask to remand for resentencing. Thank you. Thank you. Thank you, counsel. Case is submitted. You're excused.